BOSTON SAFE–DEPOSIT & TRUST CO. v. SALEM WATER CO. (SHARP, Intervener).

(Circuit Court, N. D. Ohio, E. D.  May 13, 1899.)

CONTRACT BY CITY FOR FIRE PROTECTION—RIGHT OF INDIVIDUAL TO ENFORCE —PRIVITY.

A contract between a city and a water company, by which the company agreed to construct, maintain, and operate a system of waterworks in the city, and, among other things, to maintain at all times a sufficient pressure in the mains for fire purposes, does not create a privity of contract between

the company and a citizen or resident of the city which entitles the latter to maintain an action against the company to recover for a loss by fire, on the ground that, if the required water pressure had been maintained, the fire would have been extinguished and the property saved.

Hoyt, Dustin & Kelley, for complainant.
Carey, Boyle & Mullins, for intervener.

RICKS, District Judge. In December, 1892, at the suit of the Boston Safe-Deposit & Trust Company, trustee of the mortgage securing bonds of the Salem Water Company, a receiver was appointed for the water company. Thereafter Alonzo Sharp, as administrator of one Thomas Sharp, filed an intervening petition in this action against said receiver, alleging, among other things, that the Salem Water Company and its receiver derived their right to maintain and operate the water plant in the city of Salem from a certain contract, entered into on the 19th day of March, 1887, between the village of Salem and certain assignors of said water company, by the terms of which contract said water company was authorized to establish, maintain, and operate waterworks in said village, and was obligated to furnish "an abundant supply of water for fire, domestic, manufacturing, street, sewerage, and other proper purposes for a period of 20 years," and to "construct and maintain a standpipe as part of said system of waterworks, and to supply or attach to the same an electrical, pneumatic, or hydraulic valve, and to so connect the said valve with the said pump station of said works or system that said valve could be closed at any moment and the entire force of the pumps be confined to the mains, and to so construct and maintain said waterworks that the said the Salem Water Company would be able to furnish a plentiful supply of water to said Salem and its inhabitants for personal, domestic, and manufacturing purposes, and also for the extinguishing of fires and conflagrations, and other proper purposes," and also to construct and maintain the same so as to be sufficient at all times to provide a certain pressure of water throughout the system. The intervener further states in his petition that on the 22d day of April, 1894, certain buildings, machinery, tools, etc., of which his decedent, Thomas Sharp, was the owner, were destroyed by fire, the said fire not being caused by any negligence on the part of his decedent, but that the damage caused by said fire would not have exceeded $300 had the receiver complied with the terms of said contract with the village of Salem, in which he was operating the waterworks, and that the receiver had failed in many respects to comply with his said contract, and by reason of his failure the intervener had been damaged in the sum of $30,000. To this intervening petition the receiver filed a demurrer and exceptions, upon which the case was heard.

Hoyt, Dustin & Kelley, for receiver, maintained that there was no privity of contract between the intervener's decedent and either the Salem Water Company or its receiver, and that, in the absence of a duty resting either upon the common law or upon a contract, the Salem Water Company or its receiver owed no obligation to the intervener's decedent to comply with its contract with the village

of Salem; that this action is not founded upon any common-law duty, and does not, therefore, sound in tort, is quite evident; that it is not based upon a contractual relation between the parties has been, with one exception, uniformly held in every jurisdiction within the United States where the question has arisen. Davis v. Waterworks Co., 54 Iowa, 59, 6 N. W. 126; Becker v. Waterworks, 79 Iowa, 419, 44 N. W. 694; Britton v. Waterworks Co., 81 Wis. 48, 51 N. W. 84; Hayes v. City of Oshkosh, 33 Wis. 314; Nickerson v. Hydraulic Co., 46 Conn. 24; Eaton v. Waterworks Co., 37 Neb. 546, 56 N. W. 201; Beck v. Water Co. (Pa. Sup.) 11 Atl. 300; Stone v. Water Co., 4 Pa. Dist. R. 431; Phœnix Ins. Co. v. Trenton Water Co., 42 Mo. App. 118; Howsmon v. Water Co., 119 Mo. 304, 24 S. W. 784; Fitch v. Water Co. (Ind. Sup.) 37 N. E. 982; Foster v. Water Co., 3 Lea, 42; Ferris v. Water Co., 16 Nev. 44; Fowler v. Waterworks Co., 83 Ga. 219, 9 S. E. 673; Mott v. Manufacturing Co., 48 Kan. 12, 28 Pac. 989; Bush v. Water Co. (Idaho) 43 Pac. 69; Wainwright v. Water Co., 78 Hun, 146, 28 N. Y. Supp. 987; House v. Waterworks Co. (Tex. Sup.) 31 S. W. 179; Waterworks Co. v. Brownless, 10 Ohio Cir. Ct. R. 620.

The general doctrine held by the foregoing cases is that, where a city contracts with a water company to furnish a supply of water for use in extinguishing fires, such supply to be paid for by a levy of taxes upon the taxpayers of the city, there is no such privity of contract between a citizen or resident of such city and the water company as will authorize such resident or citizen to maintain an action against said water company for the injury or destruction of his property by fire caused by the failure of the water company to fulfill its contract; and this is held even where the ordinance granting the water company its franchise provides that the water company shall pay all damages that may accrue to any citizen of the city by reason of a failure on the part of such water company to supply a sufficient amount of water to put out fires. See Mott v. Manufacturing Co., and other cases cited supra. The only case in all the books where the water company has been held liable for failure to furnish sufficient water for the extinguishment of fires is the case of Paducah Lumber Co. v. Paducah Water-Supply Co., 89 Ky. 340, 12 S. W. 554, and 13 S. W. 249, in which case it was unnecessary for the court to have held this doctrine, as there was a private contract between the water company and the consumer for the furnishing of fire pressure. This Kentucky case has been repeatedly criticised by the courts of the various states in which this question has been decided. See Mott v. Manufacturing Co., Britton v. Waterworks Co., Fitch v. Water Co., Howsmon v. Water Co., House v. Waterworks Co., Waterworks Co. v. Brownless, and Eaton v. Waterworks Co., cited supra. The following cases are cited to show the general grounds upon which privity of contract may be asserted by a person not a party thereto: Simson v. Brown, 68 N. Y. 355; Burton v. Larkin, 36 Kan. 249, 13 Pac. 398; Wright v. Terry, 23 Fla. 169, 2 South. 6; House v. Waterworks Co. (Tex. Sup.) 31 S. W. 180; Anderson v. Fitzgerald, 21 Fed. 294; Second Nat. Bank of St. Louis v. Grand Lodge of Missouri A. F. & A. M., 98 U. S. 123; Vrooman v. Terner,

69 N. Y. 280; Bank v. Rice, 107 Mass. 37; Safe Co. v. Ward, 46 N. J. Law, 19.

That a city owning its own waterworks cannot be held liable for failure to furnish sufficient water supply to extinguish fires is undisputed. 2 Dill. Mun. Corp. § 975; Wheeler v. Cincinnati, 19 Ohio St. 19; Fowler v. Waterworks Co., 83 Ga. 222, 9 S. E. 673; Wainwright v. Water Co., 78 Hun, 146, 28 N. Y. Supp. 987; Tainter v. City of Worcester, 123 Mass. 311; Vanhorn v. City of Des Moines, 63 Iowa, 447, 19 N. W. 293; Hayes v. City of Oshkosh, 33 Wis. 314; Stone v. Water Co., 4 Pa. Dist. R. 431; House v. Waterworks Co. (Tex. Sup.) 31 S. W. 179, 185. If the city itself cannot be held liable for damage resulting from failure to furnish a fire pressure to its citizens, and if there is no privity of contract between the water company operating under a franchise from the city and the citizens or residents of such city, it is clear, upon principle as well as authority, that no legal obligation exists on the part of such water company and in favor of the individual citizen to maintain a sufficient pressure at the city water mains to extinguish fires which may occur upon the premises of such individual citizen.

On the 24th day of December, 1892, Calvin A. Judson was appointed receiver of the Salem Water Company. He afterwards resigned, and Hermon A. Kelley was appointed his successor on the 19th of January, 1897. On March 19, 1887, a certain contract was entered into, by and between the common council of the village of Salem and Messrs. Turner, Clark & Rawson, of Boston, whereby the latter agreed to build and construct waterworks and standpipes, having improved engines and pumping facilities, and to furnish the city of Salem with water privileges of the character described in the petition. Afterwards, on the 22d day of April, 1894, the buildings, machinery, tools, patterns, and all property of every description on the premises described in the intervening petition, and owned by Thomas Sharp, were destroyed by fire. The intervener declares and alleges that the fire could have been extinguished if proper machinery had been furnished by the company, and if the obligations on their part in the contract between themselves and the city had been faithfully observed. There was no contract between the intervening petitioner and the company, or the city, that in case of fire he should be reimbursed for any loss he might sustain. If there were such a contract that could be enforced, there would be some foundation for the petitioner's claim in this case; but I think, under the facts stated, there is no privity of contract, and the demurrer filed by the receiver must, therefore, be sustained, and the intervening petition dismissed. This case has been very fully briefed by the receiver, and, while it is not necessary to review the authorities, they seem overwhelming upon the propositions above stated.