JONES HOUSE FURNISHING COMPANY *v.* ARKANSAW
WATER COMPANY.

## Opinion delivered April 13, 1914.

1. WATER COMPANIES—CONTRACT WITH CITY—RIGHT OF INDIVIDUAL CITIZEN.—A private citizen can not maintain an action against a water company for damages for loss of property by fire, caused by the failure of the water company to perform its contract with the city to furnish a certain pressure of water for the extinguishment of fires, there being no privity of contract between the citizen and the water company. (Page 431.)

2. WATER COMPANY—PRIVATE CONTRACT WITH CITIZEN—LIABILITY.—A water company will be liable in damages to a citizen, for a breach of a special contract made with the citizen, for a loss by fire caused by its breach of the special contract. (Page 435.)

3. WATER COMPANIES—CONTRACT WITH CITIZEN—BREACH—STIPULATION AGAINST LIABILITY.—Plaintiff entered into a contract with a water company whereby the latter agreed to furnish water in a certain manner for a fire sprinkling device in plaintiff's storehouse, but in the contract it was stipulated that the company should "be free and exempt from any and all claims for damages or injury to persons or property of the licensee or any other persons or property by reason of fire, water, failure to supply water or pressure, or any other cause whatever." *Held*, in an action to recover damages from the water company for loss of property by fire caused by the company's failure to supply water in the place and manner agreed upon, the plaintiff is not entitled to recover under the terms of the contract. (Page 436.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; affirmed.

STATEMENT BY THE COURT.

The parties to this litigation entered into the following contract:

"License for Special Connection.

"This agreement, made this 20th day of November, 1908, by and between the Home Water Company, of Little Rock, Ark., its successors or assigns, hereinafter known as the water company, and Jones House Furnishing Company, of Little Rock, Ark., their heirs, successors or assigns, hereinafter known as the licensee.

"Witnesseth, That the water company hereby licenses and grants unto the licensee the right to connect a four-inch pipe with the street main of the water company, located on Main Street, and to attach thereto the following fixtures or openings: One thousand sprinkling heads and one steamer connection through which water may be used at times of fire and for the extinguishment of fire and for no other purpose; in consideration for which privilege and license the licensee hereby agrees to pay the water company the annual sum of fifty dollars in semi-annual installments in advance on the first days of January and July. This license is granted subject to the following conditions:

"*First.* - That the superintendent of the water company or his agents may have access to the premises of

the licensee at any time for the purpose of making an inspection of said pipes and appurtenances.

"*Second.*   That all pipes and appurtenances beyond the street main shall be put in and maintained by and at the expense of the licensee.

"*Third.*   That a valve of a design approved by the water company shall be placed on said connection by the licensee at or near the curb line, which valve shall be under the control of the chief of the fire department of said city or his successors in office, and the licensee agrees to obtain the approval of said chief of the fire department or his successors in office to this license.

"*Fourth.*   That all fixtures and openings shall be kept closed and sealed and not opened or used except during times of fire and for the extinguishment of fire upon the premises of the licensee and for no other purpose, and when so opened or used the licensee will immediately notify the water company of such fact so that the said fixtures or openings may again be sealed.

"*Fifth.*   That this license does not contemplate any special service or conditions on the part of the water company, and the licensee hereby declares the water company to be free and exempt from any and all claims for damages or injury to persons or property of the licensee or any other persons or property by reason of fire, water, failure to supply water or pressure, or any other cause whatsoever.

"*Sixth.*   This license does not contemplate any purposes, or fixtures other than herein stated. All other uses must be taken from a service pipe separately connected with the street main.

"*Seventh.*   The superintendent is not authorized to change or vary the conditions of this license and the connections authorized by this license shall at all times be subject to the rules and regulations of this water company that now exist or may hereafter be adopted.

"*Eighth.*   This license is for a period of one year from the first day of December, 1908, and shall be con-

tinued thereafter until cancelled by written notice in advance by either party to the other.

"In witness whereof, the said parties have hereunto signed their names the day and year first above mentioned."

The appellant, who was the plaintiff below, sued for the breach of this contract, and in his complaint alleged substantially the following facts: That it was a corporation under the laws of this State, with its principal place of business in the city of Little Rock, and that the defendant, the appellee water company, was also a corporation under the laws of this State with its principal place of business in the city of Little Rock. That plaintiff is engaged in the business of buying and selling furniture and was the lessee of a large storehouse situated on Main Street between Sixth and Seventh streets in said city, and that on the 20th day of November, 1908, it being then the occupant and lessee of said storehouse, installed for its use in protecting its goods and merchandise from damage and loss by fire, an automatic sprinkling plant, the purpose of which plant was, in case of fire, to automatically sprinkle the premises so as to extinguish, and to prevent the spread of fire. That after the execution of the contract above set out appellee permitted connection to be made with its water mains and approved the plans which appellant had made for the water connection, and furnished appellant with water as provided by said contract, until its building was destroyed by fire. That said contract was to continue between the parties for one year from the first of December, 1908, and thereafter until cancelled by written notice in advance by either party given to the other; but that said contract has never been cancelled by writing, or in any other manner, and was still in full force and effect. That after appellant's building was destroyed by fire, the landlord rebuilt said building similar in every respect to the one destroyed by fire. That appellant again installed in the new building a sprinkling plant of substantially the same dimensions and located in substantially

ARK.] JONES H. F. CO. *v.* ARKANSAW WATER CO. 429

the same place as it was formerly. That on the 8th day of November, 1911, appellant notified appellee that the new building was completed and occupied by it as a furnishing and furniture store, and that the sprinkling equipment was ready to have the water turned on, and appellant then and there demanded and requested the appellee to turn on and connect the water to said sprinkling plant, and that appellant was then ready and willing to pay the rates fixed by the ordinances of the city of Little Rock, and called for by its contract with appellee, when the water should be turned on.

That appellant had an advantageous and profitable lease on the premises mentioned for a period of eight years, and had sublet a portion of the premises leased, said lease containing a clause that in case the premises were destroyed by fire, that the lease would thereby be cancelled. That the lessor refuses to rebuild and lease the said premises, except at a price that would cause appellant to lose the sum of $45,525. That appellee failed and refused to turn on said water without any lawful or reasonable cause and negligently and wrongfully permitted plaintiff's sprinkling apparatus to remain without water with plaintiff's stock exposed to any fire that might occur and that on the 30th day of November, 1911, fire broke out in appellant's store and its entire stock and fixtures were consumed. That if appellee had performed its duty under said contract and under its charter and the ordinances of the city of Little Rock governing it, appellee would have been able to extinguish said fire immediately and without any appreciable damage to appellant.

Appellant filed a bill of particulars showing in detail the loss it had sustained by reason of the fire and alleged that it was damaged in the sum of $229,967.67 and prayed judgment for that amount.

Appellee demurred to the complaint for the reason that the facts alleged in the complaint were insufficient to constitute a cause of action against the appellee, and did not entitle the appellant to a recovery in said action.

The court sustained the demurrer and dismissed the complaint, and this appeal has been duly prosecuted from that action of the court.

*J. W. Blackwood, Dan, W. Jones* and *W. L. Terry,* for appellant.

1. The liability of water companies to consumers in cities has been the subject of adjudication by the courts frequently. 31 Ark. 155; 31 *Id.* 411; 46 *Id.* 132; 121 S. W. 296. Contracts with the city are treated as made for the benefit of the inhabitants, and citizens may sue on the contracts. 48 Mo. App. 273; 21 Ore. 411; 14 L. R. A. 424. If necessary, 100 Ark. 47 should be modified or overruled.

2. In this case there was an express contract for water for fire prevention, and the company was liable *ex contractu.* 200 U. S. 57; 8 L. R. A. (N. S.) 1049-1052; 36 L. R. A. (N. S.) 1055; 72 Fed. 232; 38 S. W. 359; 85 *Id.* 898; 111 Tenn. 1062.

3. As to the proximate cause and care required by the water company, see 104 Me. 233.

4. It is against public policy to permit a public service corporation to relieve itself from damages for nonperformance of its contractual or charter duties. 73 Pac. 39; 63 N. E. 469; 77 N. E. 388; 60 Atl. 137; 70 L. R. A. 930; 46 Ark. 236; 50 *Id.* 397; 161 S. W. 1025.

*Moore, Smith & Moore,* for appellee.

1. The destruction of the building and sprinkler system put an end to the contract. 3 Bert. & L. 826; Pollock, Principles of Contracts, 362-372; 24 Fed. 583; 9 Ark. 466; 61 Ark. 312-315; 162 Ind. 278; 65 L. R. A. 114; 14 L. R. A. 219; 237 Ill. 610. The contract was no longer in force.

2. There was no obligation to furnish fire protection. 104 Me. 233; 71 Atl. 758; 102 Cal. 173; 64 L. R. A. 231; 159 Cal. 305; 113 Pac. 375; 100 Ark. 47.

3. The provisions of the license agreement exclude any undertaking for special service and all liability on the part of the water company. It had a right to stipu-

late for, exemption from liability.  8 L. R. A. (N. S.) 1049; 85 S. W. 389; 104 Me. 233; 71 Atl. 758; 59 Atl. 31.

4. An interesting discussion and review of the authorities will be found in 226 U. S. 220.

SMITH, J., (after stating the facts).  Appellee insists that the demurrer was properly sustained for the following reasons:

*First.*  That at the time of the fire in question, the agreement relied on had been discharged by the destruction of the first building and the sprinkler system, and that the obligations of both parties under the agreement had ceased.

*Second.*  That under the terms of the license agreement, the water company did not contract and was not obligated to perform any special service, and that the only purpose of the recital in the first clause and the fourth paragraph of the license was to limit the use that could be made of water discharged into the sprinkler system.

*Third.*  That under the express provisions of the fifth paragraph, the water company was to be exempted from liability for any cause whatsoever in connection with or growing out of the license.

It will be unnecessary to discuss either of the first two reasons offered by appellee in support of its demurrer, as we think the third reason is well taken and is decisive of this case.

It is settled that the complaint states no cause of action unless one is created by the provisions of the contract sued upon. In the case of *Collier* v. *Newport Water, Light & Power Company*, 100 Ark. 47, it was said (quoting the syllabus): "A private citizen can not sue a water company to recover damages for losses by fire sustained by him by reason of the water company's failure to furnish a certain pressure of water for the extinguishment of fires, as there is no privity of contract between him and the water company which will allow him to sue for a breach of the contract, or of the duty growing out of the contract with the city." The allegations of the com-

plaint in that case were that the water company had entered into a contract with the city whereby it had agreed to furnish said city with pure, wholesome water for the use of its citizens and "for any quantity sufficient to protect the residents of the city from loss by fire." The authorities were there reviewed and it was said the great weight of authority is against a recovery by a private property owner, who in that case had no special contract with the water company.

But appellant alleges its right to recover under the contract herein set out and says, "Whatever the rights of the appellant may have been under the ordinance (of the city of Little Rock granting the franchise to the water company) there can be no question about what its rights are under the contract, or license, set out in its complaint."

Appellant cites a number of cases where the recovery of damages against water companies was sustained for a failure to furnish water, but a number of these cases was reviewed in the case of *Ukiah City* v. *Ukiah Water & Improvement Co.,* 142 Cal. 173; 64 L. R. A. 231, and it was there said: "In each of these cases it will be observed that the court was dealing with contracts whereby the water companies for valuable concessions and exclusive privileges had agreed to do and to maintain certain specific things by way of protection from fire, and the gravamen of the charges against each and all of the companies was that they had violated their contracts in failing to do the particular things, for the doing of which they had expressly contracted. The broad distinction between those cases and the one at bar is, as pointed out in the opinion of the trial judge, that there is no express covenant in the contract between this plaintiff and this defendant, and the security of plaintiff's property was only the same security, which, in the exercise of its governmental functions, the plaintiff had obtained for the whole town." In the case of *Niehaus Bros.* v. *Contra Costa Water Co.,* 159 Cal. 305, 113 Pac. 375, an action was brought to recover damages for an

alleged breach of a contract to supply water to the premises of the plaintiff for fire protection. The court held the duty of the water company, engaged in supplying water to a city, to furnish water on the consumer's premises for fire protection can only be created by an express contract between the water company and the consumer. In that case it was contended with respect to the liability of the defendant that it was not necessary to show an express or special contract between the parties for fire protection, that from the fact that plaintiff had installed. hydrants on its premises for use, should a fire occur, and defendant had connected its water system therewith and charged the ordinance rates for water and for the hydrants, a contractual relation was thereby assumed by defendant to have constantly on hand, or at least to exercise ordinary care, to have a sufficient supply of water available at the hydrants to extinguish any fire which might arise on the premises, with a corresponding liability for any loss occurring as a direct result of its failure to do so. Discussing that question, it was there said: "Before proceeding to a discussion of this claim, it is to be noted that respondent bases its right of recovery solely on contract—a contract which it asserts existed by reason of the relation between the parties. Necessarily, its right to recover must be supported by contract because there is nothing in the constitutional provisions of this State impressing the distribution of appropriated water with a public use (Const., art. 14), or in the legislation thereunder (St. 1881, p. 54), which imposes upon a water company any obligation to furnish to the municipality, or its inhabitants, any specified quantity of water, or water for any particular purpose. Hence, no action in tort for failure to have a supply of water at the premises of a consumer in a city or town for the extinguishment of fire, or for any other purpose, is given under any statute or rule of law in this State, and hence, where liability is sought to be created, it can only arise from a private contract between the company and a consumer, under which an obligation to furnish

water for a specified purpose is undertaken by the company." *Ukiah City* v. *Ukiah Water & Imp. Co.,* 142 Cal. 175: 75 Pac. 773. And in concluding a review of the authorities on this subject, it was there said: "In all those cases, the liability was not sought to be imposed or sustained on an implied contract springing from the ordinary relation of the public water companies and its consumers; but upon a contract whereby private water companies for particular concessions and privileges extended them by the cities, had expressly agreed to furnish water for protection against fire, and they were held liable for a failure to give what they expressly obligated themselves to furnish."

The right of the water company to make such a contract as the one here sued on and in which an attempt is made to limit its liability for damages flowing from a breach thereof was discussed in the case of *Buchanan & Smock Lumber Co.* v. *East Jersey Coast Water Co.,* 59 Atl. 31, in which case the court held that by the terms of the contract, involved in that case, the defendant water company agreed to furnish the plaintiff "water for fire protection" and the plaintiff agreed to pay for the same at the rate of $15 per year for a period of five years. The contract provided that the rules and regulations of the company were made a part thereof with like effect as though written therein. One of the rules referred to was in the following words: "The company reserves the right to shut off the water for alterations, extensions and repairs, and to stop and restrict the supply of water whenever it may be found necessary, and the company shall not be, liable under any circumstances for a deficiency or failure in the supply of water, whether occasioned by shutting off water to make repairs or connections, or for any cause whatever." The court said: "Consequently the only matter now presented for consideration is the true construction of the clause, in the rule cited, relieving the defendant from liability for a deficiency or failure in the supply of water; for the holding of the trial judge above referred to eliminated from

the case the question whether a public agent (such as a water company usually is) may, by contract with a consumer, limit its liability for a failure in the supply of water agreed to be furnished, due to its own negligence. The meaning of the clause does not seem open to doubt. Except for its presence in the contract the liability of the defendant would have been absolute to respond for all damages sustained by the plaintiff by failure of the defendant to supply sufficient water for fire protection. *Middlesex Water Co.* v. *Knappman Whiting Co.*, 64 N. J. Law, 240; 45 Atl. 692; 81 Am. St. 467. The manifest object of its insertion was to do away with that absolute liability. By its terms the plaintiff agreed not to hold the defendant responsible for damages resulting from 'a deficiency or failure in the supply of water, whether occasioned by shutting off water to make repairs or connections or for any other cause whatsoever.' The use of the word 'whatsoever' is significant. If that word had not been present it might well be considered that the parties intended that the defendant should be relieved from responsibility only when the failure of water was due to some cause similar to those specifically mentioned. But 'any cause whatsoever' embraces every possible cause; not only those arising out of the exigencies of the defendant's business, but those resulting solely from the defendant's negligence. The plaintiff having agreed that the defendant should not be responsible for damages sustained by it, resulting from the failure of the latter to furnish it with sufficient water for fire protection, even though such failure was due to the negligence of the defendant, a verdict in its favor was without legal justification.''

The law, therefore, appears to be, that if a water company enters into a contract with a private owner to furnish water for a specific purpose, or any specific quantity, that it is liable for all damages proximately caused by the breach of such contract; but it also appears to be settled that the liabilities of a water company are such only as are created by the contract entered into for fur-

nishing water. What therefore are the engagements of appellee under the contract herein sued on? This contract is to be construed as a whole, and while it does provide for a specified water service, in consideration of the sum of money there named, it was there expressly stipulated that the license thus to connect with appellee's mains and to use its water, did not contemplate any special service, or conditions, on the part of the water company, and the license expressly declares the water company to be "free and exempt from any and all claims for damages or injuries to persons or property by reason of fire, water, failure to supply water or pressure, or any other cause whatsoever." Appellant insists that this limitation of liability is void because it is against public policy to permit a public service corporation to relieve itself from damages for the nonperformance of its contractual or charter duties, and cases are cited in support of that proposition, and it is urged that the same reason of public policy, which prevents common carriers from stipulating against their own negligence, would operate to prevent a public service corporation like appellee from stipulating against liability for a breach of its contract to furnish water. But appellant's analogy is not well taken. There would be no liability against appellee but for the contract, and that liability is only such as the contract creates. Whereas, the liability of a carrier is not created by its contract with the shipper, its duties are fixed by the common law and its written or special contract with the individual shipper is usually for the purpose of limiting or restricting its liability, and certain limitations are said to be contrary to public policy and therefore void. Here appellee by the terms of the contract sued on assumed a certain obligation, which was created by the contract, and which otherwise had no existence; and it assumed this obligation only upon the condition stated in paragraph 5 of the contract. This paragraph does not undertake to exempt the water company from damages for the breach of this contract, but only provides that it shall

"be free and exempt from any and all claims for damages or injury to persons or property by reason of fire, water, failure to supply water or pressure or any other cause whatsoever." This exemption relieves from a liability which would arise under the contract from a failure to furnish water in the event of a fire. But while it does contain an exemption from a consequential liability, which might follow the failure to turn on the water, it does not contain any exemption from liability for a direct breach of it. The only right of action under this contract is the one *ex contractu,* and this action could be maintained independently of the fact that a fire has occurred, and the damages recoverable for the breach of the contract are not augmented by the occurrence of the fire. The only damages here sued for are those which resulted from the fire, and we conclude therefore that the demurrer was properly sustained and the judgment of the court below is therefore affirmed.